UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MICHAEL PAPAZIAN,<br><br>    Petitioner,<br><br>    v.<br><br>B.M. TRATE,<br><br>    Respondent. | Case No. 1:24-cv-00392-HBK (HC)<br><br>OPINION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS[1]<br><br>(Doc. No. 33) |

Petitioner James Michael Papazian ("Petitioner"), a federal inmate, is proceeding pro se on his second amended petition for writ of habeas corpus under 28 U.S.C. § 2241, filed while he was incarcerated at United States Penitentiary ("USP") Atwater, located in Merced County, California, which is within the venue and jurisdiction of this Court. (Doc. No. 29, "Petition"). The Petition raises two grounds for relief in connection with a prison disciplinary hearing centering concerning an alleged credit card scheme by Petitioner: (1) the disciplinary hearing officer ("DHO") failed to identify any prohibited action committed by Petitioner, in violation of his due process rights; and (2) an investigator violated Petitioner's due process and privacy rights when he made an inquiry regarding Petitioner to a credit card company. (Doc. No. 29 at 2-3).[2]

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. § 636(c)(1). (Doc. No. 22).

[2] All citations to the pleadings and record are to the page number as it appears on the Case Management and Electronic Case Filing ("CM/ECF") system.

1  Petitioner asserts he has exhausted his administrative remedies because he has filed appeals with
2  the Bureau of Prisons ("BOP") at both the regional level and central office.  (*Id.* at 4).
3        Respondent filed a Motion to Dismiss ("Motion") with Appendix on February 18, 2025,
4  arguing Petitioner failed to exhaust his administrative remedies and his claims are meritless.
5  (Doc. Nos. 33, 33-1).  Petitioner filed a response to the motion.  (Doc. No. 43).  For the reasons
6  set forth more fully herein, the Court grants Respondent's Motion to Dismiss.

7  **I.     BACKGROUND**

8        Petitioner is currently serving a 292-month federal prison sentence for his 2019 conviction
9  out of the United States District Court for the District of Nebraska for conspiracy to distribute 50
10 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 391 and 846.  (Doc. No.
11 33-1 at 3, 11).  From August 1, 2021, to December 3, 2021, while Petitioner was incarcerated at
12 Federal Correctional Institution Victorville, Special Investigative Service ("SIS") Tech E. Deleon
13 monitored incoming and outgoing correspondence, phone calls, and emails for Petitioner.  (Doc.
14 No. 33-1 at 17).  Petitioner "directed multiple people outside of the prison to apply for a variety
15 of credit cards utilizing his personal information."  (*Id.*).  Petitioner "directed people utilizing his
16 inmate phone and email account" and also used other prisoners' accounts to circumvent SIS's
17 monitoring.  (*Id.*).  CapitalOne flagged Petitioner's personal information with a fraud concern
18 given multiple application attempts, but CapitalOne thought it was actually Petitioner applying
19 for the credit cards.  (*Id.*).

20       On January 13, 2022, Petitioner received written Incident Report ("IR") 3586411 for
21 phone abuse in violation of BOP Code 197 and mail abuse in violation of BOP Code 196.  (*Id.*).
22 After Petitioner was provided with the IR, the matter was referred to Petitioner's Unit Discipline
23 Committee ("UDC"), and the UDC concluded there was sufficient basis to refer the matter to the
24 DHO for disposition.  (*Id.* at 4-5, 18).  During this process, Petitioner was advised of his rights.
25 (*Id.* at 19-20).

26       On March 1, 2022, a disciplinary hearing on the IR was convened.  (Doc. 33-1 at 5, 13).
27 Petitioner appeared at the hearing and confirmed he received a copy of the IR and had submitted a
28 written statement.  (*Id.* at 14).  Petitioner requested Deleon as his staff representative; however,

because Deleon had written the IR he could not serve as the staff representative and Petitioner declined to select a different staff member. (*Id.*). Petitioner waived his right to call any witnesses. (*Id.*). The DHO advised Petitioner that he was amending the code violation to support the description of the incident and found that Petitioner had "committed the prohibited acts of Conduct Disruptive of the Security or Orderly Runing of a BOP Facility, in violation of Code 199, most like Abuse of the Mail for Criminal Purpose, Code 196." (*Id.* at 15). The DHO relied on Deleon's statement; emails to and from Petitioner's account; an email from CapitalOne; a handwritten note discovered in Petitioner's property; and Petitioner's statement at his discipline hearing. (*Id.* at 14-16). Petitioner was sanctioned to disallowance of 41 days of good conduct time and loss of email privileges for 6 months. (*Id.* at 6, 16).

Petitioner argues his due process rights were violated because there was not sufficient evidence to support a code violation for a criminal purpose and also argues Deleon violated his rights by contacting CapitalOne. (Doc. No. 29 at 2-3). As relief, Petitioner seeks expungement of the violation and his return to a lower security prison. (*Id.* at 11). Respondent argues Petitioner failed to exhaust his administrative remedies because he "did not even complete an initial level in the administrative review process;" the due process challenge is meritless; and Petitioner's claim concerning the CapitalOne inquiry is both meritless and not cognizable under § 2241. (Doc. No. 33 at 4).

**II.     APPLICABLE LAW AND ANALYSIS**

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

3

At the outset, a challenge to the execution of a sentence by a federal prisoner, as opposed to the imposition of a sentence, is properly brought under 28 U.S.C. § 2241. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000) (*per curiam*). Thus, government action that affects the duration of a prisoner's sentence, such as a loss of good time credits following a disciplinary proceeding, are properly brought via § 2241. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Here, Petitioner alleges the disciplinary proceedings resulted in the loss of approximately 41 days of good time credit.

### A. Exhaustion

"Federal prisoners [generally] are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *see also Ward v. Chavez*, 678 F.3d 1042 (9th Cir. 2012). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition is judicially created; it is not a statutory requirement. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995). Because exhaustion is not required by statute, it is not jurisdictional. *Id.* (citing *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987)). If petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." *Id.*

Requiring a petitioner to exhaust administrative remedies (1) aids judicial review "by allowing the appropriate development of a factual record in an expert forum," (2) conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and (3) allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam). Dismissal is appropriate when a federal prisoner has not exhausted the administrative remedies made available by the BOP. *See Quinonez v. McGrew*, 649 F. App'x 475 (9th Cir. 2016) (affirming district court's dismissal of a § 2241 petition where the petitioner "did not complete any level of the BOP's Administrative Remedy Program and there is no indication

4

1   that his pursuit of those remedies would be futile").  However, the Court may waive the
2   exhaustion requirement when administrative remedies are inadequate, irreparable injury may
3   occur without immediate judicial relief, or exhaustion otherwise would be futile.  *Laing v.*
4   *Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004) ("[D]istrict court's habeas jurisdiction under 28
5   U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is
6   available.").

7   When seeking administrative remedies, an inmate must first attempt informal resolution
8   (BP-8).  28 C.F.R. § 542.13.  Thereafter, the BOP makes available a formal three-level
9   Administrative Remedy Program: (1) a Request for Administrative Remedy (BP-9) filed at the
10  institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal (BP-
11  10) filed at the Regional Office for the geographic region in which the inmate's institution is
12  located; and (3) a Central Office Administrative Remedy Appeal (BP-11) filed with the Office of
13  General Counsel.  28 C.F.R. § 542.10 et seq.  However, "DHO appeals shall be submitted initially
14  to the Regional Director for the region where the inmate is currently located."  28 C.F.R. §
15  542.14(d)(2).

16  To support that Petitioner failed to exhaust, Respondent submitted the declaration of
17  Carrie Cervantes, the Discipline Hearing Administrator for BOP's Western Regional Office, and
18  a report showing all administrative remedies filed by Petitioner.  (Doc. No. 33-1 at 2-9, 54-62).
19  According to Cervantes, three separate administrative filings address the March 1, 2022 DHO
20  report.  (*Id.* at 8).  The first, Remedy No. 1117710-F1, was received at the facility on April 11,
21  2022, and was rejected because it was untimely, it was filed at the wrong level, and it improperly
22  attempted to challenge multiple disciplinary infractions in a single remedy request.  (*Id.* at 8, 56).
23  The other two requests, Remedy Nos. 1184991-A1 and 1184991-A2, were rejected because they
24  were filed at the Central Office level without any record of Petitioner having filed at the
25  administrative level.  (*Id.* at 8, 59-60).  Thus, Respondent contends "Petitioner has failed to
26  properly submit an administrative Remedy Request at even one level of the BOP Administrative
27  Remedy Program, let alone all applicable levels."  (*Id.* at 8).
28  In response, Petitioner submits a certified mail receipt which he asserts "shows official

5

1  service of the Regional filing and proves the exhaustion of all administrative remedies." (Doc.
2  No. 43 at 2, 9).  The receipt is postmarked September 23, 2022.  (*Id.* at 9).
3        After reviewing the documents submitted by the parties, it appears Petitioner failed to
4  *properly* exhaust his administrative remedies.  However, the Court need not conclusively resolve
5  the exhaustion issue given that Petitioner is not entitled to relief on either of his grounds raised.
6  *See Seriales v. lizarranga*, No. 1:18-cv-01064-DAD-JLT (HC), 2019 WL 201524, at *4 (E.D.
7  Cal. Jan. 15, 2019) (excusing exhaustion requirement because Petitioner's claims were without
8  merit, and any attempt to exhaust would be futile); *see also Ahmed v. United States Bureau of*
9  *Prisons*, No. CV-23-1369-PHX-DGC (JFM), 2024 WL 643514, at *5 (D. Ariz. Jan. 26, 2024).
10  Thus, the Court waives the exhaustion requirement and will turn to the merits.

11      **B.**    **Ground One – Due Process Violation**

12        Federal prisoners have a right to due process during prison disciplinary hearings.  *See*
13  *Wolff* v. *McDonnell*, 418 U.S. 539 (1974) ("[D]ue process requires procedural protections before
14  a prison inmate can be deprived of a protected liberty interest in good time credits.").  Due
15  process requires: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an
16  impartial hearing body; (3) an opportunity, when consistent with institutional safety and
17  correctional goals, to call witnesses and present documentary evidence in his defense; (4) a
18  written statement by the factfinder of the evidence relied on and the reasons for the disciplinary
19  action; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are
20  legally complex.  *Id.* at 563-567.  Prisoners bear the burden to demonstrate that they did not
21  receive due process during their disciplinary hearing.  *See Parnell v. Martinez*, 821 Fed. Appx.
22  866, 866-867 (9th Cir. 2020) (finding that the district court "properly dismissed [the petitioner's]
23  due process claim challenging his disciplinary hearing following his failure to submit to a
24  urinalysis because [the petitioner] failed to allege facts sufficient to demonstrate that he was not
25  afforded all the process that was due.").
26        Moreover, "revocation of good time does not comport with 'the minimum requirements of
27  procedural due process,' unless the findings of the prison disciplinary board are supported by
28  *some evidence* in the record." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S.

445, 454 (1985) (quoting *Wolff*, 418 U.S. at 558) (emphasis added).  The court need not reexamine the entire record, assess the credibility of the witnesses, or weigh the evidence presented during the hearing.  *See id*. at 455-56.  Rather, the court determines whether there is "*any* evidence in the record that could support the conclusion reached by the disciplinary board."  *Id*. (emphasis added).

Petitioner contends his due process rights were violated because there was no evidence of a "criminal purpose" to support the code violation.  (Doc. No. 29 at 3).  Additionally, he argues he was denied his right to confront Deleon; the amendment to a Code 199 violation was improper because he was given no opportunity to object; the evidence resulting from the CapitalOne inquiry should not have been considered; and the DHO failed to consider exculpatory material demonstrating that Petitioner and his friends were working to build their credit before their release.  (*Id.* at 9-10).

Respondent argues Petitioner's due process challenge fails because there was "some evidence" to support the DHO's determination.  (Doc. No. 33 at 5-6).  Respondent reasons Petitioner received sufficient notice of the challenged conduct because "BOP regulations authorize the DHO to find facts and then determine whether the prohibited act charged specifically, or a similar prohibited act if reflected in the Incident Report, was committed by the inmate."  (*Id.* at 5 n.5 (citation modified)).

In his reply, Petitioner contests Respondent and the DHO's interpretation of the evidence and argues he only legally used and applied for credit cards in his own name.  (Doc. No. 43 at 3-7).

The record is sufficiently developed on the claimed due process violations for the Court to rule on the Petition's due process claims without an evidentiary hearing.  *Anderson v. United States*, 898 F.2d 751, 753 (9th Cir. 1990).  After review of the record, the Court concludes Petitioner fails to establish a due process violation.  Petitioner was notified of his rights before the DHO hearing, appeared at the hearing, declined to present evidence and call witnesses, and was notified in writing of the DHO's findings.  *See Wolff*, 418 U.S. at 563-67.  Contrary to his argument, Petitioner did not have a right to confront Deleon in the disciplinary proceedings.  *See*

7

*id.* at 567-68.  While the DHO did alter the violation from the initially charged Codes 196 and 197 to Code 199 most like Code 196, such did not alter the factual nature of the alleged prohibited conduct.  *See Woodson v. Doerer*, No. 5:23-cv-01996-DMG (GJS), 2024 WL 3914520, at *6 (C.D. Cal. July 24, 2024) (collecting cases).  Code 196 prohibits "use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act."  *See* 28 C.F.R. § 541.3 Table 1.  Code 199 prohibits "[c]onduct which disrupts or interferes with the security or orderly running of the institution of the Bureau of Prisons most like another Greatest severity prohibited act."  *Id.*  "This charge is to be used only when another charge of Greatest severity is not accurate."  *Id.*  Petitioner wholly fails to present any argument as to how the change from a Code 196 violation to a Code 199 most like a Code 196 altered the underlying facts he would need to provide a defense.  Because "the factual nature of the charged conduct was exactly the same for both offenses," no due process violation occurred.  *Woodson*, 2024 WL 3914520, at *6.

Further, there is sufficient evidence in the record to support the violation finding.  In reaching his conclusion, the DHO relied on Deleon's written report and information in the SIS investigative report; emails from Petitioner concerning opening multiple credit cards; an email from CapitalOne indicating it flagged Petitioner's account due to fraud concerns; a handwritten note discovered in Petitioner's property which gave his information with 3 separate social security numbers and instructions on opening credit cards; and Petitioner's written and oral statements at the disciplinary hearings. (Doc. No. 33-1 at 15-16).  While Petitioner argues for a different interpretation of the evidence, it is not for this Court to reexamine the record, independently assess credibility, or reweigh the evidence before the DHO. *See Hill*, 472 U.S. at 455-56. The record before the Court contains "some evidence" to support the DHO's conclusion, and due process requirements were met under *Wolff*.

Based on the foregoing, the Court finds Petitioner has not established that the BOP violated Petitioner's constitutional due process rights in the BOP disciplinary proceedings and resulting BOP sanction.

**C. Ground Two – Privacy Violation**

In his second ground for relief, Petitioner argues Deleon violated his due process and

8

privacy rights when he used Petitioner's personal information to contact CapitalOne regarding the suspected fraud, which prompted CapitalOne to place a fraud alert on Petitioner's account. (Doc. No. 29 at 3). Respondent argues Petitioner is not entitled to relief because Petitioner failed to offer evidence establishing that Deleon's inquiry to CapitalOne was a search and, even if the inquiry amounted to an unlawful search, there was sufficient evidence to support the DHO report without the evidence from CapitalOne. (Doc. No. 33 at 7). Additionally, Respondent argues Petitioner's unconstitutional search claim is not cognizable under § 2241 but rather must be brought in a *Bivens* action. (*Id.*). Petitioner does not address ground two in his response. (*See generally* Doc. No. 43 at 1-8).

Regardless of how the Court frames Petitioner's second ground, he has failed to show that he is entitled to any relief based on Deleon's conduct. The Court notes that there is no evidence before the Court to support that Deleon did anything more than contact CapitalOne concerning the potential fraud. The only information Deleon received from this contact was confirmation that "multiple attempts [to apply for credit with Petitioner's information] were made from a source outside of prison" and CapitalOne believed it was Petitioner himself applying for the cards. (Doc. No. 33-1 at 15, 23, 28). To the extent Petitioner challenges Deleon's actions as an invasion of his privacy, such claim fails because as a prisoner, "whatever privacy right he has may be overridden for legitimate penological reasons." *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010). This is because "[a] right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984)). Thus, a "prisoner's expectation of privacy always yield[s] to what must be considered the paramount interest in institutional security." *Id.* To the extent Petitioner alleges Deleon's conduct amounted to an impermissible "search" such that the evidence obtained from CapitalOne should not have been considered in the DHO hearing, any error in considering the evidence was harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (habeas petitioner must show that any constitutional error had a "substantial and injurious effect or influence" on the proceedings to be entitled to relief); *McCloud v. Lake*, 787 F. App'x 483, 483-

84 (9th Cir. 2019) (applying *Brecht* to § 2241 challenge to prison disciplinary hearing).  Even without the limited evidence provided by CapitalOne, the record still contains some evidence supporting the code violation, including emails from Petitioner instructing others to apply for credit cards using multiple social security numbers and the handwritten letter listing Petitioner's name with three separate social security numbers and detailing how funds obtained would be separated.  (Doc. No. 33-1 at 32, 34-36, 40, 42-43).  Accordingly, even if consideration of the CapitalOne evidence was improper, any error was harmless, and Petitioner is not entitled to relief on ground two.

Accordingly, it is **ORDERED:**

1. Respondent's Motion to Dismiss (Doc. No. 33) is **GRANTED**.
2. Petitioner is denied any relief on his Petition (Doc. No. 1).
3. The Clerk of Court shall enter judgment and close this case.

Dated:     August 29, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE